Good morning. May it please the court, my name is Raymond Aver, A-V-E-R, and I'm appearing on behalf of the appellants John Redmond and Maureen Redmond, who are present in court today. Your honors, we're here today to talk about litigation involving an objection to discharge and dischargeability, a primary matter in bankruptcy cases involving the fundamental rights of individuals to get a fresh start. In this case, your honors, this is not an extreme case of flagrant bad faith, callous disregard of discovery duties, warranting terminating sanctions. First of all, with regard to the motion to compel, we believe that the bankruptcy court erred in considering the motion to compel. And because of that, everything else going forward was tainted. The local bankruptcy rules have a specific rule that deals with discovery motions. It's rule 7026-1. And it requires a meet and confer. It requires the drafting of a written stipulation. And in the absence of the same, the court will not consider the discovery motion. Well, counsel, could I just maybe skip ahead? I don't mean to cut you off there. But as I understand it, at one point, the bankruptcy judge made it clear that, look, I've sort of had it with some of what I consider your antics up until this point. I'm giving you one last warning that if you do not strictly comply with everything that I'm going to tell you to do from here going forward, that's it. I'm going to impose terminating sanctions. And as I understand it, there still wasn't full compliance after that. Well, I'll address the question, and then I'll try and go back to my presentation. There was a hearing on a motion to compel. The motion to compel requested an extension of the discovery cutoff and monetary sanctions. Instead of addressing the relief requested in the motion and, in our opinion, stating you haven't complied with the discovery statutes, the court says, I'm going to issue terminating sanctions. But before I do that, I'm going to have one more hearing for you. That's not what he said. He said, I didn't say I'm going to issue terminating sanctions. He said, unless you do X, Y, and Z, I'm going to issue terminating sanctions. In effect, that's what the court said. Excuse me. Don't cut me off. My understanding of what he said was, as Judge Watford said, was I'm not going to issue terminating sanctions. But you need to do X, Y, and Z from henceforward, or then I will issue terminating sanctions. There were three hearings. There was the first hearing where the court indicated somewhat of an intention that we were heading down the road, if not specifically saying I'm going to issue terminating sanctions, that we're heading down that road. There was no oral argument at the first hearing. At the second hearing, there was very little oral argument. And at that hearing, the court laid out what the court wanted done. You're right, Your Honor. That's exactly what happened. Okay. And then what happened between the second hearing and the third hearing, which was the hearing on the motion for terminating sanctions, was we know that the defendants, who are elderly individuals who had medical problems, whose daughter had medical problems, they went and they, in my opinion, performed a Herculean task in gathering up, I mean, basically there were 10 years of records that were required to be produced because the bankruptcy court didn't look at the over-breath and the burdensomeness of the discovery requests, never even really addressed those things. That, he said, was because they hadn't filed for any protective orders. That's right. And we know that under Rule 37, you can object to a request for production of documents, and then at that point, you would have your meet and confer, and you'd have your stipulations, and you'd have those types of protections where counsel sit there and try and work these issues out, and then you specifically get into, okay, request for production number one is over-broad because, request for production number two is burdensome because, and then the court makes a ruling. At various times, according to your adversary, they attempted to have meet and confers and were rebuffed. The only meet and confers were with regard to the depositions. There were never any meet and confers with regard to the document production request, and that would be supported in the record. And going back to the point that you began with, the alleged taint, because of the failure to apply by the strict terms of the local rules, so this court in Professional Programs Group v. Department of Commerce, 29 F. 3rd, 1349, 9th Circuit, 1994, at page 1353,  the district court has broad discretion to depart from the strict terms of the local rules where it makes sense to do so, and substantial rights are not at stake, close quote. And here, you filed an opposition that set forth all your various arguments, so I don't see how any substantial rights were affected by the alleged noncompliance with the local rule. So where's the harm? The harm was, Your Honor, that the parties weren't allowed to go through the process of the meet and confer. I understand that, but that's what the case I just cited says a judge can, in an appropriate case, overlook if it doesn't affect the substantial rights. At the meet and confer, presumably you would have made the same arguments that you then made to the judge, so he heard everything you had to say, and while it would have been better, perhaps, to have the meet and confer, nothing turned on that in any meaningful way because you got a chance in a court to say exactly what your arguments were. I respectfully disagree, Your Honor, in the sense that instead of kind of rudimentary canvassing of the request for production, there would have been a focus on them. These were requests for production seeking documents from the year 2000 to the present, the present being 2009. Nine years of documents for individuals for business. Quite aside from that, from documents, there were questions put to your clients at the depositions, which as they had done previously, they unilaterally just refused to answer. Your Honor, I appreciate that. They appeared for a full Mr. Redman appeared for two full days of deposition. Mrs. Redman appeared for one full day. The questions that they didn't answer, Your Honor, related to activities that occurred during the bankruptcy case, so had absolutely nothing to do with the gravamen of the causes of action in the complaint. The complaint related to an objection to dischargeability, which related to facts that occurred well before the bankruptcy, and the objections to discharge related to things that occurred at the time of the filing of the bankruptcy. Were you the attorney at the deposition? Yes. So did you tell them? You don't have any right to refuse to answer. You've got to answer. If it turns out to be irrelevant, that objection is preserved as a matter of law, but you have to answer. Did you tell them any of that? Your Honor, I think you're asking me to divulge attorney-client communications. No. Did you say anything like that on the record? Your Honor, on the record, I don't recall exactly what occurred on the record. What happened was Mrs. Redman says things like, oh, I'm not going to answer that. Why not? I don't want to. It's private. You can't run a deposition that way. They had made a commitment. There was a sale of the equity in their house in the bankruptcy case, and they were concerned about the, well, how should I say it, the volatility of the principle of Sulphur Mountain. When they were able to convince an individual to make a loan in connection with the purchase of the equity, they promised that individual that they would not disclose the identity of that individual. Your Honor, I understand, but it wasn't relevant. It had absolutely nothing to do with the issues, and they answered each and every other question, all of the questions that could even tangentially be relevant to the issue at hand, and they produced documents, and they worked tirelessly to do that. This is not a case where they were. So you think that even though the law says you have to answer questions that are, in your mind, irrelevant, that you, the witness, can't make that determination, even though the law says that clearly and unequivocally, that your clients are an exception to that operation of law? Well, Your Honor, let's liken it to, let's assume that I was being deposed, and the judge had ordered me to answer each and every question that had been posed to me, and I stated on the record that I couldn't answer it, and I wasn't going to answer it, thinking that it was privileged. It was a privileged communication. Privilege is different. That is, as you know, preserved in the rule. But supposing you said, I'm not going to answer it because I think it's irrelevant. You would be in contempt of court. You'd be reported to the Bar Association. You would face disbarment proceedings if it was you. You'd be subject to sanctions. Why is it different for your clients? There was far more ramifications to answering the question than it was just irrelevant. The Redmonds answered many, many irrelevant questions during the 21 hours that they were deposed. They answered all the questions except for that. And so to hand them down the ultimate sanction for failing to answer one question that was not relevant and that they had valid and just. But the problem was that it was a reproduction of what had happened earlier. In other words, one of the things the district court said they had done and weren't to do again was to refuse to answer questions not at the direction of the attorney and simply just not answer them. I don't recall that as being the case, Your Honor. The court is correct, however, that they were ordered to answer all the questions. Okay, your time has exceeded. Thank you. May it please the Court, David Blake Sheffield appearing on behalf of Pelley Sulphur Mountain Land and Livestock Company. Now I've listened to the appellant's statement or his rendition of the facts, which vary tremendously from the findings of facts which were made by the trial court and which were supported by evidence. The statement that there was one question that was refused to be answered is totally incorrect. They consistently failed to answer questions at their deposition, refused to answer questions. This case was about concealing property and income and they wouldn't produce documents about those subject matters. And when they did, it was redacted. And when we asked them questions about it, they said, oh, we can't answer questions because somebody redacted this. We don't know who, but I can't answer the questions. And this conduct is not just related to this one discovery issue. The trial court was incensed because it had made many orders that the defendants simply failed to comply with. The first one was failing to attend the Rule 26F conference by a date that the court set. They simply failed to attend. No matter what I did, calling, writing, they wouldn't comply with their Rule 26. So I did my disclosures and began discovery. Then eight months later, the trial court is dealing with the fact that they haven't made their disclosures and the discovery cutoff is less than a month away. And I've been prejudiced in my case because I can't get this discovery from them. And they never did their disclosures. The trial court also, even simple matters like scheduling orders, when the trial court ordered them to provide scheduling orders and to give notice, they didn't do that either. The entire two years of the case was fraught with the defendants. Well, what is the impact in all this of what appears to have been at least one mistake with regard to the motion to compel? In other words, that the motion to compel appears to have been that there was one instance in which you didn't comply, the district court seemed to have understood, with the letter of the local rules. Well, I attempted. I'm not sure how it fits in, but what is the impact of that on everything that happened up until that point? Well, the impact, I attempted and did meet and confer with counsel several times, but attempted to meet and confer prior to filing my motion to compel. The court rightfully determined that it would have been futile to make any more efforts. I think that the district court was correct in stating that there's no specific reference. The federal statutes governing the jurisdiction do not require this, and that the plain language of the local rules indicate that the bankruptcy court retains jurisdiction to consider motions to compel, even though the parties have failed to make a good-faith effort to resolve the discovery dispute. I thought the district court, maybe it was about something else, failed to give fees and costs because it found, after some investigation, that, in fact, you hadn't provided the written stipulations or whatever that you were supposed to provide. Well, my take on that, Your Honor, was that the court felt that having issued an evidentiary sanction which prohibited them from providing any evidence at trial was sufficient and that monetary sanctions was not required at that point. That was my take on it. The court had previously stated that there was good cause for noncompliance with the stipulation section, but I did provide a 23-paragraph declaration of noncooperation of counsel, which is also provided for in the local rule. You have the alternative. I can't get opposing counsel to meet and confer. Opposing counsel told me, he says, I refuse to meet and confer with you in person because I think that in-person meet and confers don't work. And then when I try to call him, he makes an agreement and he doesn't follow through with it. And this happens for a period of eight months. The trial court admonished them, warned them, and gave them three chances at least to comply with its orders. And its orders were to produce all documents without objection, because they hadn't raised any objections, to testify and answer all questions and to stop refusing to answer questions. But they continued to do so despite the trial court's warning. And the trial court was correct in determining that the lesser sanction that it had given had no effect and that the only sanction left was the terminating sanction. It was correct in issuing it. I know this isn't directly relevant, but how did the size of the debt become what it ended up being? Because as I understood, the original case that they were involved in was over a relatively insignificant sum. Because the defendants engaged in a series of stalling tactics, defensive maneuvers. They filed two or three, maybe four bankruptcies that we had to litigate. And on the eve of trial each time, we would get to the eve of trial, then they would engage in some tactic that would cost $100,000 in attorney's fees to go through to get a bankruptcy dismissed or to get it to the point back where the court would set it for trial. And it was their own defensive, abusive tactics, the same type of tactics they used in the bankruptcy court, that caused the attorney's fees to raise the amount of the judgment to that amount. And the judge admonished them at trial that it was their own fault that the attorney's fees were so high because of all these tactics, bad faith tactics he called them. Were they represented by the same counsel in each of those maneuvers? Yes, Your Honor, but not the attorney at the bankruptcy court level. But I believe it was the defendants themselves that were the people who were engaging and urging these tactics because they were so similar in each of the actions. Did you have any further questions? No further questions. Thank you very much. Thank you. Just a few comments in response. The court did not conclude that the lack of compliance with local bankruptcy rule 7026 was futile. The court didn't grant monetary sanctions because there was no compliance with local bankruptcy rule 7026. It did grant other sanctions. But it did grant other sanctions. Oh, yes, it did. Leaving off the terminating. I mean, at that time it did. It did. I mean, complete evidentiary sanctions the court granted at the motion to compel level. Even though there was no prejudice to the plaintiffs. The courts refused to allow either of the Redmonds to testify. And let's go back to the state court litigation. I wasn't involved in the state court litigation at all. But I do know from reviewing the docket and the records and the files, there was a lot of activity in the state court litigation. And there was a lot of discovery and there was a lot of law in motion. How they racked up those kinds of fees, I don't know. But you can tell that there was a lot that went into it. But getting back to this, and they took the Redmonds' depositions in the state court. And so the bankruptcy judge says, no, I'm not going to allow the Redmonds to testify. Even though the complaint sets forth all of the alleged misconduct of the Redmonds. Even though the initial disclosures list the Redmonds. Wouldn't allow the Redmonds' daughter to testify. Even though they had gotten her deposition in the state court. Even though there were allegations as to her. So this is why I think that the bankruptcy judge was just abused. But all of that was irrelevant because it never happened. We could have worried about it if it happened. Okay, but that kind of gives you a color, a picture, a sense of what was going on. I think a very, very good one. The evidentiary sanctions weren't in lieu of the monetary sanctions. There's nothing in the record that would indicate that. I never refused to meet and confer in person. That's just not true. It is true that you didn't. And although there was a deadline for the initial disclosures, you didn't. Yes, I didn't. Yes, that's correct. Although there were several deadlines, actually. I mean, the extended deadline, you didn't do it. Counsel says that the court ordered production of all documents because the Redmonds hadn't raised any objections. Now, this is a lengthy record, and people can forget a lot of things, and I understand that. And so perhaps that's what happened here. But there were evidentiary objections raised to each and every request for production of documents. They were timely raised. And while the bankruptcy court didn't feel that some of them were very good, I understand that. Wait, let's back up a minute. You just acknowledged that, in fact, you didn't comply with an order to produce the initial disclosures. Yes, Your Honor. So there wasn't an objection. You just didn't do it. No. For months, many months. We're talking, I think, about two different things. We're talking about the initial disclosures, and we're talking about the request for production of documents. You're talking about the second, but I'm talking about the first in terms of what you didn't do. Okay, Your Honor. Without any objections or protective orders or anything else. With regard to the initial disclosures, the court is correct. And if I could go back in time and do it again, of course, I'd change that. All right, well, your time is up. All right. Thank you very much. Thank you very much. Thank both of you for your argument in Redmond v. Sulfur Mountain Land and Livestock. The case is submitted.
judges: Rakoff, Berzon, Watford